# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JOSIAH DUEHNING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13 C 5617 |
| | ) | |
| AURORA EAST UNIFIED SCHOOL | ) | Chief Judge Rubén Castillo |
| SCHOOL DISTRICT 131, and JOY | ) | |
| CHASE, East Aurora High School Dean | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Josiah Duehning brings this action against Defendants East Aurora School District #131[1] (the "District") and Joy Chase, East Aurora High School Dean ("Chase") (collectively "Defendants") pursuant to 42 U.S.C. § 1983 ("Section 1983"), alleging deprivations of his rights under the First and Fourteenth Amendments to the U.S. Constitution, as well as Sections 3 and 4 of Article I of the Illinois Constitution. (R. 16, Am. Compl.) Plaintiff seeks a declaration pursuant to the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, and the Illinois Declaratory Judgment Act, 735 Ill. Comp. Stat. 5/2-701, that the District maintains a policy that "the public sidewalks in front of schools[,] such as East Aurora High[,] are public fora and thus open for activity[,] such as his preaching and leafleting." (*Id.* at 18.) Presently before the Court are the parties' cross-motions for summary judgment. (R. 39, Defs.' Mot. Summ. J.; R. 52, Pl.'s Mot. Summ. J.) For the reasons stated below, Defendants' motion for summary judgment is granted, and Plaintiff's cross-motion for summary judgment is denied.

---

[1] Defendant East Aurora School District #131 was incorrectly named as Aurora East Unified School District 131 in court filings by the Plaintiff. (*See* R. 35, Defs.' Answer at 1; R. 41, Defs.' Facts at 1.)

Plaintiff is an individual who resides in Aurora, Illinois. (R. 41, Defs.' Facts ¶ 1; R. 53, Pl.'s Rule 56.1 Resp. ¶ 1.)  The District is a school district located in Aurora, Illinois. (R. 41, Defs.' Facts ¶ 2; R. 53, Pl.'s Rule 56.1 Resp. ¶ 2.)  Chase is a Dean of Students at East Aurora High School, and is employed by the District. (R. 41, Defs.' Facts ¶ 3; R. 53, Pl.'s Rule 56.1 Resp. ¶ 3.)  Plaintiff has traveled to high schools and colleges in Aurora, Illinois, handing out Christian tracts (pamphlets) and engaging students in conversations about Christianity since 2008; specifically, he has visited East Aurora High School around a dozen times. (R. 53, Pl.'s Add'l Facts ¶ 1; R. 56, Defs.' Rule 56.1 Resp. ¶ 1.)  On earlier visits prior to the events at issue here, Plaintiff was told by police to cross the street when preaching and leafleting, but was not ticketed or arrested when he declined to do so. (R. 53, Pl.'s Add'l Facts ¶ 2; R. 56, Defs.' Rule 56.1 Resp. ¶ 2.)  Plaintiff and Defendants dispute much of what transpired on the date at issue in this case, August 28, 2012, when Plaintiff returned to East Aurora High School to pass out tracts.

Plaintiff contends that he passed out tracts to students while standing on the sidewalk in front of East Aurora High School. (R. 53, Pl.'s Add'l Facts ¶ 4.)  He further contends that after looking at a tract, Chase asked Plaintiff if he was involved with the school. (*Id.* ¶ 5.)  When he replied no, Chase told Plaintiff, "Oh, you'll have to go across the street then." (*Id.*)  Plaintiff maintains that he was on the sidewalk during this entire interaction. (*Id.*)  He also contends that Chase never identified herself to him as a school official during this interaction. (*Id.* ¶ 6.)  After

---

[2]  The Court takes the facts from the parties' Local Rule 56.1 statements of material facts. (R. 41, Defendants' Statement of Material Facts ("Defs.' Facts"); R. 53, Plaintiff's Corrected Response to Defendants' Statement of Material Facts ("Pl.'s Rule 56.1 Resp."); R. 53, Plaintiff's Corrected Statement of Additional Material Facts ("Pl.'s Add'l Facts"); and R. 56, Defendants' Response to Plaintiff's Corrected Statement of Additional Facts ("Defs.' Rule 56.1 Resp.").)

this interaction, Plaintiff began conversing with a group of students who "invited" him onto [school property] to further discuss his literature. (*Id.* ¶ 10.)

However, Defendants present a different version of events: Defendants contend that Chase observed Plaintiff approaching students "on or near school property[,]" and observed that the students appeared "uncomfortable with and bothered by Plaintiff's presence and interaction." (R. 41, Defs.' Facts ¶ 9.) Chase requested that Plaintiff exit school property in an effort to protect students from the unknown adult male who was not affiliated with the school. (*Id.* ¶ 10.) Plaintiff refused to leave and continued approaching students on school property. (*Id.* ¶ 11.)

The parties agree on what transpired next: after Chase spoke with Plaintiff, she then used her radio device to contact Officer Victor DeValdivielso, a City of Aurora police officer assigned to the school as a resource officer, to notify him that Plaintiff refused to leave school property. (R. 41, Defs.' Facts ¶ 13; R. 53, Pl.s' Add'l Facts ¶ 8.) Upon receiving the call from Chase, Officer DeValdivielso approached Plaintiff, who was standing on school property. (R. 41, Defs.' Facts ¶ 14; R. 53, Pl.s' Add'l Facts ¶ 11.) Chase personally identified Plaintiff to Officer DeValdivielso as the individual she was referring to in her radio communication. (R. 41, Defs.' Facts ¶ 15; R. 53, Pl.s' Rule 56.1 Resp. ¶ 15.) Officer DeValdivielso admonished Plaintiff that he should have left in response to Chase's earlier request and demanded his identification. (R. 53, Pl.s' Add'l Facts ¶ 11; R. 56, Defs.' Rule 56.1 Resp. ¶ 11.)

Plaintiff contends that he moved onto the sidewalk after realizing he was on school property and gave his identification to Officer DeValdivielso. (R. 53, Pl.s' Add'l Facts ¶ 12.) Plaintiff further contends that as Officer DeValdivielso checked out his identification, Chase told him "to stop passing out his Christian tracts." (*Id.* ¶ 13.) However, Defendants contend that Plaintiff refused to leave school property after being instructed to do so repeatedly by Officer

DeValdivielso. (R. 41, Defs.' Facts ¶ 17.) Defendants further contend that after Chase identified Plaintiff to Officer DeValdivielso, she had no further contact with Plaintiff. (*Id.* ¶ 16.) Defendants also contend that Chase was unaware of the content of Plaintiff's tracts and made no effort to read them. (R. 41, Defs.' Facts ¶ 22.)

The parties agree that after checking on Plaintiff's identification, Officer DeValdivielso twisted Plaintiff's arm and pushed him onto school property, to which Plaintiff stated that he did not want to go on the property. (R. 53, Pl.s' Add'l Facts ¶ 14; R. 56, Defs.' Rule 56.1 Resp. ¶ 14.) Officer DeValdivielso told Plaintiff, "Don't resist, I WILL take you down." (*Id.*) Officer DeValdivielso then arrested Plaintiff for criminal trespass pursuant to City of Aurora Ordinance Section 29-93. (R. 53, Pl.s' Add'l Facts ¶ 14; R. 41, Defs.' Facts ¶ 18.) Officer DeValdivielso subsequently performed a search of Plaintiff's belongings, including a backpack Plaintiff wore to carry his tracts, which revealed that Plaintiff had a knife in his backpack. (R. 41, Defs.' Facts ¶ 19; R. 53, Pl.s' Rule 56.1 Resp. ¶ 19.) The trespass charges against Plaintiff were later dismissed. (R. 53, Pl.s' Add'l Facts ¶ 15; R. 56, Defs.' Rule 56.1 Resp. ¶ 15.)

## PROCEDURAL HISTORY

Plaintiff initiated this action on August 6, 2013, against the City of Aurora, Illinois, and Officer Victor DeValdivielso, Star Number 366, of the Aurora Police Department. (R. 1, Compl.) Plaintiff amended his complaint on April 8, 2014, adding the District and Chase as Defendants. (R. 16, Am. Compl.) In Count I, Plaintiff alleges that Officer DeValdivielso violated his First and Fourteenth Amendment rights. (*Id.* at 7.) In Count II, Plaintiff alleges a claim for false arrest against Officer DeValdivielso in violation of his Fourth and Fourteenth Amendment rights. (*Id.* at 9.) In Count III, Plaintiff alleges a claim for unlawful detention against Officer DeValdivielso in violation of his Fourth and Fourteenth Amendment rights. (*Id.*)

In Count IV, Plaintiff alleges a claim of excessive force against Officer DeValdivielso in violation of his Fourth and Fourteenth Amendment rights. (*Id.* at 10.) In Count V, Plaintiff alleges a claim of retaliation against Officer DeValdivielso in violation of his Fourth, Fourth, and Fourteenth Amendment rights. (*Id.*) In Count VI, Plaintiff alleges that the City of Aurora maintained an unconstitutional custom or policy in violation of the First and Fourteenth Amendments. (*Id.* at 12.) In Count VII, Plaintiff alleges a claim for battery against Officer DeValdivielso. (*Id.* at 13.) In Count VIII, Plaintiff alleges that Chase violated his First and Fourteenth Amendment rights. (*Id.* at 14.) In Count IX, Plaintiff alleges that the District maintained an unconstitutional custom or policy in violation of the First and Fourteenth Amendments. (*Id.* at 15.) In Count X, Plaintiff alleges that Defendants violated his rights under Article I, Sections 3 and 4 of the Illinois Constitution. (*Id.* at 16.) In Count XI, Plaintiff seeks a declaratory judgment pursuant to the Illinois Declaratory Judgment Act, 735 Ill. Comp. Stat. 5/2-701, that "the public sidewalks in front of schools[,] such as East Aurora High[,] are public fora and thus open for activity[,] such as his preaching and leafleting." (*Id.* at 17.) In Count XII, Plaintiff seeks the same declaration from the Court pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and Federal Rule of Civil Procedure 57. (*Id.* at 18.) In Count XIII, Plaintiff alleges a claim for indemnification against the District and the City of Aurora pursuant to the Illinois Tort Immunity Act, 745 Ill. Comp. Stat. 10/9-102. (*Id.* at 19.)

The City of Aurora and Officer DeValdivielso answered the amended complaint on May 5, 2014. (R. 24, City of Aurora & DeValdivielso's Answer.) Defendants filed a motion to dismiss Counts VIII-XIII of the Amended Complaint pursuant to Rule 12(b)(6) on May 21, 2014. (R. 25, Defs.' Mot. to Dismiss.) The Court denied Defendants' motion on July 2, 2014. (R. 34, Min. Entry.) Defendants answered the amended complaint on July 9, 2014. (R. 35,

Defs.' Answer.) On August 12, 2014, Plaintiff voluntarily dismissed the City of Aurora and

Officer DeValdivielso from this suit, (R. 36, Min. Entry), and the Court dismissed both parties

with prejudice on August 13, 2014, (R. 37, Order). Counts VIII through XIII remained after

dismissing the City of Aurora and Officer DeValdivielso. The remaining Defendants moved for

summary judgment on October 15, 2014. (R. 39, Defs.' Mot. Summ. J.) Plaintiff filed his

amended cross-motion for summary judgment and response to Defendants' motion on January 6,

2015. (R. 52, Pl.s' Am. Mot. Summ. J.) Defendants replied on January 20, 2015. (R. 58, Defs.'

Reply.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is

proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986) (citation omitted). In deciding a motion for summary judgment, the Court does

not evaluate the weight of the evidence, judge the credibility of the witnesses, or determine the

ultimate truth of the matter; instead, it is the function of the Court in ruling on a motion for

summary judgment to ascertain whether there exists a genuine issue of triable fact. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). "A disputed fact is 'material' if it might affect

the outcome of the suit under governing law." *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713

(7th Cir. 2009) (citing *Anderson*, 477 U.S. at 248). In determining whether a genuine issue of

material fact exists, the Court must view the evidence and draw all reasonable inferences in favor

of the non-movant. *See Anderson*, 477 U.S. at 255; *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011) ("Even on summary judgment, district courts are not required to draw every requested inference; they must only draw reasonable ones that are supported by the record.").

The movant has the initial burden of demonstrating that it is entitled to summary judgment. *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). The movant "can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993) (citing *Celotex*, 477 U.S. at 325). Once the movant has met this burden, the non-movant must set forth "specific facts demonstrating that there is a genuine issue for trial." *Wheeler*, 539 F.3d at 634 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The non-movant may not rely on mere conclusions or allegations to create a genuinely disputed issue of material fact. *See Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003) (citing *Anderson*, 477 U.S. at 247-48). Nor can mere speculation "be used to manufacture a genuine issue of fact." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (citation omitted). In order to defeat a motion for summary judgment, the non-movant "must make a showing sufficient to establish any essential element of [its] cause of action for which [it] will bear the burden of persuasion at trial." *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 425 (7th Cir. 1997). "The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement. The nonmoving party must show that there is evidence upon which a jury reasonably could find for [it]." *Wheeler*, 539 F.3d at 634 (internal citation omitted). "In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of

material fact to avoid summary judgment." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010). On cross-motions for summary judgment, each movant must satisfy the requirements of Rule 56. *See Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008) ("As with any summary judgment motion, this Court reviews these cross-motions construing all facts, and drawing all reasonable inferences from those facts, in favor of . . . the non-moving party." (internal quotation marks and citation omitted)).

## ANALYSIS

### I. Whether Chase deprived Plaintiff of his First Amendment rights

In Count VIII, Plaintiff seeks relief under Section 1983 for deprivations of his First and Fourteenth Amendments rights by Chase.[3] (R. 16. Am. Compl.) In Plaintiff's motion for summary judgment he argues that Chase violated his free speech rights "by telling [him] to cross the street while he handed out religious pamphlets on the public sidewalk in front of East Aurora High School at dismissal time . . . ." (R. 52, Pl.s' Am. Mot. Summ. J. at 4.) Defendants argue that Plaintiff has failed to establish that he was actually deprived of any constitutional right, or that Defendants caused such a deprivation. (R. 40, Defs.' Mem. at 4.)

Section 1983 creates a cause of action against any person who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any

---

[3] Plaintiff has not specified whether he is suing Chase in her official or individual capacity. A plaintiff may bring a Section 1983 claim against a government actor in the actor's official capacity or in his individual capacity. *See Hill v. Shelander*, 924 F.2d 1370, 1372 (7th Cir. 1991). However, a suit against an individual defendant in his official capacity is a claim against the municipality of which the official is an agent. *Richman v. Sheahan*, 270 F.3d 430, 439 (7th Cir. 2001). Because Plaintiff argues that Chase directly caused his constitutional deprivation, the Court will assume Plaintiff seeks to sue Chase in her individual capacity. *See Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003). Plaintiff also raises a Section 1983 claim against the District, and therefore, to the extent he seeks relief against Chase in her official capacity, the Court will address this in its analysis of Plaintiff's claims against the District below.

rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

Section 1983 does not provide substantive rights; rather, "it is a means for vindicating federal

rights conferred elsewhere." *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997) (citing *Baker*

*v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Individual liability under section 1983 must be

based upon a finding that the defendant caused the alleged constitutional deprivation. *Palmer v.*

*Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003). In other words, "[a]n official causes a

constitutional violation if he sets in motion a series of events that defendant knew or reasonably

should have known would cause others to deprive plaintiff of constitutional rights." *Hernandez*

*ex rel. Hernandez v. Foster*, 657 F.3d 463, 487 (7th Cir. 2011) (internal quotation marks and

citation omitted).

      The Court agrees with Defendants that Plaintiff has not proven a deprivation of his First

Amendment rights. The Seventh Circuit has made clear "that the mere *attempt* to deprive a

person of his First Amendment rights is not, under usual circumstances, actionable under section

1983." *Andree v. Ashland County*, 818 F.2d 1306, 1311 (7th Cir. 1987); *see also Goldschmidt v.*

*Patchett*, 686 F.2d 582, 585 (7th Cir.1982) (holding that plaintiff attorney suffered no actual

deprivation of First Amendment rights under Section 1983 where defendant advised plaintiff that

his newspaper advertisement violated Illinois statute prohibiting advertising for dissolution of

marriage, and plaintiff continued advertising despite the letter); *Reichenberger v. Pritchard*, 660

F.2d 280, 285-86 (7th Cir. 1981) (holding that owners of bar with nude dancers suffered no

deprivation of First Amendment rights under Section 1983 claim where they failed to allege

interruption of business or expressive activities, despite monetary losses); *R&V Pine Tree, Inc. v.*

*Vill. of Forest Park*, 947 F. Supp. 342, 345 (N.D. Ill. 1996) (finding that village's attempts to

suppress music played on "disc jockey nights" at a restaurant by imposing fine and brief

suspension of liquor license did not deprive restaurant owner of First Amendment rights under Section 1983 because harassment did not stop "disc jockey nights" or interrupt owner's business).

In this case, although the parties dispute the precise language Chase used, they agree that the substance of Chase's message to Plaintiff was that he needed to move away from the school. The Court views Chase's admonition, at best, as an attempt to curtail Plaintiff's First Amendment activity. Defendants assert and Plaintiff concedes that he continued handing out his literature and conversing with students. (R. 41, Defs.' Facts ¶ 11; R. 53, Pl.s' Add'l Facts ¶ 10.) Therefore, Plaintiff's expressive activity remained uninterrupted despite Chase's admonition, and any purported attempt to curtail his First Amendment rights was unsuccessful. Without any further action by Chase to actually curtail Plaintiff's expressive activity, the Court cannot conclude that Plaintiff sustained a constitutional deprivation cognizable under Section 1983.[4] Therefore, the Court concludes that Chase did not deprive Plaintiff of his First Amendment rights. Plaintiff has the burden to prove that he suffered a constitutional deprivation, *see McAllister*, 615 F.3d at 881, and he has failed to sustain his burden or to raise any genuine issues of material fact that support a denial of Defendants' motion. Accordingly, the Court grants summary judgment in favor of Defendants as to Count VIII.

The Court briefly turns to Defendants' alternative argument that even if Chase committed a constitutional violation, she is entitled to qualified immunity. (R. 40, Defs.' Mem. at 12-13.) Because the Court has found that Chase is not liable for any constitutional violation, the Court need not delve further into Defendants' qualified immunity argument. *See Spencer v. Pistorious*,

---

[4] Plaintiff does not argue that Officer DeValdivielso deprived him of exercising his First Amendment rights by arresting him, or that Chase incurred any liability under Section 1983 for her role in facilitating his arrest.

No. 14-1704, 2015 WL 1322859, at *7 (7th Cir. Mar. 25, 2015) (invoking qualified immunity "would be pointless" if plaintiffs have established no constitutional violation).

## II.     Whether Plaintiff's claims against the District survive summary judgment

### A.     Whether the District maintained a policy or custom that caused a constitutional deprivation

In Count IX, Plaintiff seeks relief under Section 1983 based on allegations that the District maintained a policy or custom that resulted in a deprivation of his First and Fourteenth Amendment rights. (R. 16, Am. Compl.) In Plaintiff's motion, he argues that the District's practice of requesting third-party adults who are unaffiliated with the school to exit school property and/or the safe school zone at dismissal time violates Plaintiff's First and Fourteenth Amendment rights. (R. 52, Pls.' Am. Mot. Summ. J. at 2-3.) Defendants argue that even if Plaintiff can establish a constitutional violation, he cannot show that the violation was the result of the District's policy or custom. (R. 58, Defs.' Reply at 11-13.) The District also argues that it maintains no such policy or custom. (*Id.*) However, as part of discovery the District submitted an interrogatory answer admitting that it maintains a practice of "request[ing] that third party adults, who are non-students, non-parents, and otherwise not affiliated with the District to exit school property and/or the safe school zone at dismissal time." (R. 55, Ex. 1, Interrog. Answer at 2.) Defendants further explain that "[t]his practice is followed to ensure the safety of the minor students exiting the school at dismissal time." (*Id.*) Illinois law defines the "safe school zone" as "any school property, ground, or street, sidewalk, or public way immediately adjacent thereto and any public right-of-way situated immediately adjacent to school property." 720 Ill. Comp. Stat. 5/21-5.5(a). The zone is in effect "during regular school hours or within 60 minutes before or after the school day or 60 minutes before or after a school-sponsored activity." *Id.*

11

Under *Monell v. Dept. of Social Services of New York*, municipalities, including school districts, may not be held liable for the actions of their employees under the doctrine of *respondeat superior* in a Section 1983 case. 436 U.S. 658, 690-91 (1978); *see also Cornfield by Lewis v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1324 (7th Cir. 1993) (same). Instead, municipal liability attaches only "when execution of a government's policy or custom . . . inflicts the injury." *Montano v. City of Chi.*, 535 F.3d 558, 570 (7th Cir. 2008) (quoting *Monell*, 436 U.S. at 694; *Schlessinger v. Salimes*, 100 F.3d 519, 522 (7th Cir. 1996)). "A local government unit's unconstitutional policy or custom can be shown by: (1) an express policy causing the loss when enforced; (2) a widespread practice constituting a custom or usage causing the loss; or (3) a person with final policymaking authority causing the loss." *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008) (internal quotation marks and citation omitted). The plaintiff must also show a direct causal connection between the policy or practice and his injury, in other words that the policy or custom was the "moving force behind the constitutional violation." *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)). However, "if no constitutional violation occurred in the first place, a *Monell* claim cannot be supported." *Petty v. City of Chi.*, 754 F.3d 416, 424 (7th Cir. 2014).

Here, the Court has already concluded that Plaintiff failed to demonstrate that a constitutional violation occurred based on Chase's admonition to move away from the school, which Plaintiff did not heed. Because Plaintiff suffered no violation of his rights based on Chase's mere admonition, there can be no municipal liability. *See Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504 (7th Cir. 2010) ("[A] municipality cannot be liable under *Monell* when there is no underlying constitutional violation by a municipal employee."); *King ex. rel King v. East St. Louis Sch. Dist. 189*, 496 F.3d 812, 817 (7th Cir. 2007) ("It is well

established that there can be no municipal liability based on an official policy under *Monell* if the policy did not result in a violation of [a plaintiff's] constitutional rights"); *Alexander v. City of South Bend*, 433 F.3d 550, 557 (7th Cir. 2006) (finding that a municipality defendant cannot be liable under *Monell* for a policy or custom of inadequately training and supervising its police officers, unless the defendant violated a constitutional guarantee). Having decided that municipal liability does not exist in this case, the Court need not reach the issue of whether the District maintained an unconstitutional policy or custom. Plaintiff has failed to demonstrate that he is entitled to summary judgment, nor has he raised a genuine issue of material fact to defeat Defendants' summary judgment motion as to Count IX. Thus, the Court grants summary judgment in favor of Defendants as to Count IX.

### B. Whether the District violated Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment

Although Plaintiff's brief is not a model of clarity, he appears to raise an additional claim for the first time in his motion for summary judgment, arguing that the District's policy violates his rights under the Equal Protection Clause of the Fourteenth Amendment. (R. 52, Pl.'s Am. Mot. Summ. J. at 17.) Plaintiff argues that he is a "class-of-one" that the District has targeted for unfair discrimination. (*Id.* at 17-18.) Generally, new claims cannot be raised at the summary judgment stage. *See Auston v. Schubnell*, 116 F.3d 251, 255 (7th Cir. 1997) (holding that it "is too late in the day to be adding new claims" at the summary judgment stage); *Teall v. City of Chi.*, 986 F. Supp. 1098, 1101 (N.D. Ill. 1997) ("It is well settled within the Seventh Circuit that a plaintiff cannot amend his complaint with a later filed brief."). However, because Plaintiff did plead sufficient certain facts alleging a class-of-one equal protection claim to give Defendants "fair notice" of his intent to move for summary judgment on this issue under Rule 8(a), the Court will address Plaintiff's claim. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(discussing pleading requirements of Rule 8(a)(2); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512-14 (2002) (same).

"The Equal Protection Clause of the Fourteenth Amendment prohibits state action that discriminates on the basis of membership in a protected class or irrationally targets an individual for discriminatory treatment as a so-called 'class of one.'" *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010). Plaintiff does not argue that he is a member of a protected class. Instead, Plaintiff's argument relies on the Illinois Labor Dispute Act, 820 Ill. Comp. Stat. 5/1.5, which preempts any local ordinance that imposes restrictions on picketing of employers because it is an intrusion upon the exclusive power and function of the state. (R. 52, Pl.'s Am. Mot. Summ. J. at 17-18.) Plaintiff argues that the statute allows the District to bar evangelists from exercising their First Amendment rights on public sidewalks in front of schools, but permits labor picketers to exercise their First Amendment rights in the same space. (*Id.*) Defendants do not substantively address Plaintiff's argument, but instead argue that because "Plaintiff fails to establish a violation of a Constitutional right, Defendants are entitled to judgment as a matter of law on all Counts pled against them in Plaintiff's Amended Complaint." (R. 40, Defs.' Mem. at 7; *see* R. 58, Defs.' Reply at 6.)

"A plaintiff alleging a class-of-one equal-protection claim must establish that (1) a state actor has intentionally treated him differently than others similarly situated, and (2) there is no rational basis for the difference in treatment." *Reget*, 595 F.3d at 695 (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Srail v. Vill. of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009)). As to the first prong, in order to be similarly situated, "the persons alleged to have been treated more favorably must be identical or directly comparable to the plaintiff in all material respects." *Id.* "While this is not a precise formula, it is nonetheless clear that similarly

situated individuals must be very similar indeed." *Id.* (internal quotation marks and citation omitted). Generally, whether individuals are similarly situated is a question of fact for the jury to decide; however, "a court may properly grant summary judgment where it is clear that no reasonable jury could find that the similarly situated requirement has been met." *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004); *see also RJB Props., Inc. v. Bd. of Educ. of City of Chi.*, 468 F.3d 1005, 1010 (7th Cir. 2006) (holding that the plaintiff's evidence must allow a reasonable jury to "eliminate any reasonably conceivable state of facts that could provide a rational basis" for the difference in treatment." (internal quotation mark omitted)). The Seventh Circuit has imposed a "high burden" on plaintiffs seeking to meet the similarly situated requirement. *Id.* at 1003. As to the second prong, some Seventh Circuit cases have also required proof that the state action was motivated by illegitimate animus against the plaintiff, while others have treated illegitimate animus as an alternative basis for class-of-one liability. *See Srail*, 588 F.3d at 944 (comparing the Seventh Circuit's "divergent class-of-one precedent"); *Del Marcelle v. Brown Cnty. Corp.*, 680 F.3d 887 (7th Cir. 2012) (en banc) (a 5-5 division by the Seventh Circuit resulting in no controlling opinion). However, the Court need not discuss the conflict here, as Plaintiff's claim is doomed because of the total lack of evidence of similarly situated individuals.

A plaintiff claiming an equal protection violation under a class-of-one theory must first identify someone who was similarly situated to him but treated differently. *See United States v. Moore*, 543 F.3d 891, 896 (7th Cir. 2008). Other than his reference to hypothetical labor picketers, he has not identified any persons to which he is similarly situated. The Court briefly notes that its reading of the Illinois Labor Dispute Act does not provide a free pass to labor picketers to engage in unrestricted First Amendment activity, rather it strips local municipalities

of the ability to regulate their activity and instead reserves such regulatory power to the State. Nonetheless, even if Plaintiff were correct in his analysis of the regulation, he has still wholly failed to identify a single comparator, let alone one that is "*prima facie* identical in all relevant aspects." *Srail v. Vill. of Lisle*, 588 F.3d at 945. The Seventh Circuit places a high burden on Plaintiff in meeting this standard because "different treatment of dissimilarly situated persons does not violate the equal protection clause." *Maulding Dev., L.L.C. v. City of Springfield, Ill.*, 453 F.3d 967, 970 (7th Cir. 2006) (internal alterations and citation omitted). Plaintiff's conclusory and speculative allegations simply fail to carry the day, and the Court concludes that no reasonable jury could find that the similarly situated requirement has been met. *See McDonald*, 371 F.3d at 1002; *see also Kohlman v. Vill. of Midlothian*, 833 F. Supp. 2d 922, 935 (N.D. Ill. 2011) (holding that "[b]ecause the plaintiffs have not identified any specific similarly situated people who were treated differently, let alone people who are similarly situated in all material respects, their "class of one" equal protection claim fails"); *Muczynski v. Lieblick*, No. 10 C 0081, 2010 WL 3328203, at *3 (N.D. Ill. Aug. 19, 2010) (conclusory allegation that plaintiff is similarly situated to other individuals is insufficient). Therefore, the Court finds that Plaintiff's equal protection claim cannot survive, and denies Plaintiff's summary judgment motion as to this claim. Accordingly, Defendants are entitled to summary judgment on this claim. *See McDonald*, 371 F.3d at 1002; *Bell v. Duperrault*, 367 F.3d 703, 709-10 (7th Cir. 2004) (affirming district court's grant of summary judgment where the plaintiff failed to raise a triable issue as to whether he was "similarly situated" to comparators).

### C.     Whether Plaintiff is entitled to declaratory relief under the DJA

In Count XII, Plaintiff seeks declaratory relief pursuant to the DJA, 28 U.S.C. § 2201 and Rule 57, that "the public sidewalks in front of schools[,] such as East Aurora High[,] are public

fora and thus open for activity[,] such as his preaching and leafleting." (R. 16, Am. Compl. at 18.) In Plaintiff's motion for summary judgment, he argues that he is entitled to a declaratory judgment because "the School District maintains a policy that erroneously treats public sidewalks adjacent to the grass around its schools as non-public fora, and . . . runs afoul of the First and Fourteenth Amendments . . . ." (R. 52, Pl.s' Am. Mot. Summ. J. at 4.) Defendants again do not substantively address Plaintiff's argument, but instead argue that because "Plaintiff fails to establish a violation of a Constitutional right, Defendants are entitled to judgment as a matter of law on all Counts pled against them in Plaintiff's Amended Complaint." (R. 40, Defs.' Mem. at 7.)

The DJA authorizes a federal court, "[i]n a case of actual controversy within its jurisdiction," to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The DJA does not enlarge the jurisdiction of federal courts nor does it expand substantive rights. *See Deveraux v. City of Chi.*, 14 F.3d 328, 330 (7th Cir. 1994). The DJA's "actual controversy" requirement is equivalent to Article III's case-or-controversy requirement. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Whether an "actual controversy" exists depends on "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 127 (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)); *see also Wis. Cent., Ltd*, 539 F.3d at 759 (same). "It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 241 (1937). "[A] party seeking a declaratory

judgment has the burden of establishing the existence of an actual case or controversy."
*Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95 (1993) (citing *Aetna Life Ins.*, 300 U.S. at 240-41).

In this case, the Court need not reach whether a case or controversy is present. The Court has already denied Plaintiff's Section 1983 claims, and therefore it cannot grant Plaintiff the relief he seeks. *See Snyder v. King*, 745 F.3d 242, 250 (7th Cir. 2014) (holding that plaintiff's failure to plead his *Monell* claim stripped him of the ability to secure declaratory relief). The Seventh Circuit has instructed that when a court has found no underlying Section 1983 liability, it is "constitutionally and statutorily constrained" from granting declaratory relief. *Lekas v. Briley*, 405 F.3d 602, 615 (7th Cir. 2005) (finding that the court could not grant declaratory relief after the dismissal and waiver of plaintiff's Section 1983 claims). Accordingly, this Court is without the power to provide Plaintiff a declaratory judgment.

The Court recognizes the tension between maintaining traditional public fora, such as sidewalks, for First Amendment activity, and permitting school districts to effectively manage school property and property immediately adjacent on behalf of students. The Supreme Court acknowledged this tension in *Grayned v. City of Rockford*, where it held:

> Just as Tinker made clear that school property may not be declared off limits for expressive activity by students, we think it clear that the public sidewalk adjacent to school grounds may not be declared off limits for expressive activity by members of the public. But in each case, expressive activity may be prohibited if it 'materially disrupts classwork or involves substantial disorder or invasion of the rights of others.'

408 U.S. 104, 118 (1972) (quoting *Tinker v. Des Moines Indep. Comm. Sch. Dist.*, 393 U.S. 503, 513 (1969)). The facts of this case simply do not present the Court with the opportunity to address such an issue. *See Brandt v. Vill. of Winnetka, Ill.*, 612 F.3d 647, 650 (7th Cir. 2010) ("Courts should not issue declaratory judgments until the dispute is ripe . . . and must avoid

unnecessary constitutional adjudication." (internal citation omitted)). Plaintiff has failed to meet his burden of proving the availability of declaratory relief, and thus the Court must deny Plaintiff's motion for summary judgment as to Count XII. Because Plaintiff cannot prevail as a matter of law, Defendants are entitled to summary judgment as to Count XII.

### III. Whether this Court may exercise supplemental jurisdiction over Plaintiff's remaining state law claims

Plaintiff also moves for summary judgment on his remaining state law claims. (*See* R. 52, Pl.'s Am. Mot. Summ. J. at 2.) In Count X, Plaintiff alleges that Defendants violated his rights under Article I, Sections 3 and 4 of the Illinois Constitution. (R. 16, Am. Compl. at 16.) In Count XI, Plaintiff seeks a declaratory relief pursuant to the Illinois Declaratory Judgment Act, 735 Ill. Comp. Stat. 5/2-701. (*Id.* at 17.) In Count XIII, Plaintiff alleges a claim for indemnification against the District pursuant to the Illinois Tort Immunity Act, 745 Ill. Comp. Stat. 10/9-102. (*Id.* at 19.)

In Plaintiff's motion, he does not make any specific arguments as to his state constitutional claims other than to argue that his conduct at East Aurora High School was protected by Article I of the Illinois Constitution. (R. 52, Pl.'s Am. Mot. Summ. J. at 4.) Further, Plaintiff seeks the same declaration under Illinois law as he does under the DJA. (*Id.*) Plaintiff also argues that the District is liable for Chase's "willfull and wanton" conduct under the Illinois Tort Immunity Act. (*Id.* at 18.) Defendants argue that if the Court enters summary judgment on behalf of Defendants as to Plaintiff's federal claims, the Court should relinquish jurisdiction over Plaintiff's state law claims. (R. 40, Defs.' Mem. at 14-15.)

Under 28 U.S.C. § 1367, a district court has supplemental jurisdiction over state claims that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §

1367(a).  A district court may decline to exercise supplemental jurisdiction if the court has

dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3).  "[T]he

presumption is that the court will relinquish federal jurisdiction over any supplemental state-law

claims" when the federal claims are dismissed before trial. *Al's Serv. Ctr. v. BP Prods. N. Am.,*

*Inc.*, 599 F.3d 720, 727 (7th Cir. 2010) (citing 28 U.S.C. § 1367(c)(3)); *see also Groce v. Eli*

*Lilly*, 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the

usual practice is to dismiss without prejudice state supplemental claims whenever all federal

claims have been dismissed prior to trial.").  A district court should exercise its discretion to

relinquish jurisdiction over supplemental state law claims remaining after the dismissal of federal

claims subject to three exceptions: "when the [refiling] of the state claims is barred by the statute

of limitations; where substantial judicial resources have already been expended on the state

claims; and when it is clearly apparent how the state claim is to be decided." *Williams v.*

*Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007).

The Court has granted summary judgment in favor of Defendants on all of Plaintiffs'

federal claims, and the parties are not diverse; therefore, the Court has dismissed all claims over

which it has original jurisdiction.  The Court finds that the exceptions to relinquishing

supplemental jurisdiction are inapplicable in this case.  First, the statute of limitations for

Plaintiff's state law claims was tolled during the pendency of this action and will continue to be

tolled for an additional thirty days after dismissal pursuant to 28 U.S.C. § 1367(d).  *Myers v.*

*Cnty. of Lake, Ind.*, 30 F.3d 847, 848 (7th Cir. 1994).  Under the Illinois Savings Statute, 735 Ill.

Comp. Stat. 5/13-217, where a federal court relinquishes supplemental jurisdiction over state law

claims, a plaintiff has one year following dismissal to file those claims in state court. *Davis v.*

*Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008); *see also S.C. Vaughan Oil Co. v. Caldwell,*

*Troutt & Alexander*, 693 N.E.2d 338, 342 (Ill. 1998). Therefore, Plaintiff will be able to re-file

his claim in state court. Second, although discovery in this case has been completed and thus

judicial resources have already been expended to some degree, the Court's reasoning with

respect to Plaintiff's federal Section 1983 claims did not reach issues fully dispositive of

Plaintiff's pendent state claims. *See Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir.

1994) ("If the district court, in deciding a federal claim, decides an issue dispositive of a pendent

claim, there is no use leaving the latter to the state court."). Finally, due in part to ambiguities in

Illinois law, it is not "clearly apparent" how the remaining state law claims will be resolved. [5]

The Court also notes that the Seventh Circuit, in affirming a district court's refusal to exercise

supplemental jurisdiction, held that "regarding state claims, state courts can provide a better

forum when the issue being considered is a state actor's compliance with state law." *Dargis v.*

*Sheahan*, 526 F.3d 981, 990 (7th Cir. 2008); *see also Myers*, 30 F.3d at 849 ("How far state law

exposes state and local agencies to liability is a delicate question that federal judges should

hesitate to tackle.") Finding no justification for departing from that "usual practice" in this case,

the Court will dismiss Plaintiff's state law claims without prejudice. *See Groce,* 193 F.3d at 501

## IV.     Whether Plaintiff is entitled to injunctive relief

In addition to a declaratory judgment, Plaintiff seeks to enjoin Defendants from "further

violating the constitutional rights of Plaintiff and/or others similarly situated, pending resolution

---

[5]   The Illinois Supreme Court has held that "the Illinois Constitution may provide greater
protection to free speech than does its federal counterpart" in certain instances. *City of Chi. v.*
*Pooh Bah Enters., Inc.*, 865 N.E.2d 133, 168 (Ill. 2006). The Court finds no authority, and the
parties offer none, that determines whether the Illinois Constitution provides more protection
than the federal Constitution to individuals distributing religious literature on or near school
property. Accordingly, the Court finds it appropriate to dismiss the state law constitutional claim
in favor of permitting the state court to resolve this ambiguity in state law. *See United Mine*
*Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (holding that courts should consider the
novelty and complexity of the issues presented by the state law claims when determining
whether to relinquish supplemental jurisdiction).

of this litigation." (R. 16, Am. Compl. at 19.) Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Having already decided that Plaintiff is not entitled to relief on his federal claims, the Court declines to grant Plaintiff injunctive relief on those claims. *See Snyder*, 745 F.3d at 245-47 (the court found that plaintiff could not obtain injunctive relief after failing to plead his sole *Monell* claim because "he simply [had] no lawsuit left"). Plaintiff is free to seek injunctive relief in state court in addition to declaratory relief under the Illinois Declaratory Judgment Act if he prevails on his state law claims.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' summary judgment motion, (R. 39), and DENIES Plaintiff's summary judgment motion, (R. 52), as to Counts VIII, IX, and XII. The Court dismisses without prejudice Counts X, XI, and XIII pursuant to 28 U.S.C. § 1367(c). The Clerk is directed to enter judgment in favor of Defendants consistent with this opinion.

ENTERED:

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: April 20, 2015**

22